**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KEITH A. BATTLE

     Plaintiff,

     v.

TRULAND SYSTEMS CORPORATION,

     Defendant.

Civil Action No. 12-106 (CKK)

**MEMORANDUM OPINION**
(March 19, 2014)

Plaintiff Keith Battle filed suit against Defendant Truland Systems Corporation ("Truland") claiming a hostile work environment, retaliation, and disparate treatment in violation of 42 U.S.C. § 1981. Plaintiff's claims arise out of a series of racially charged incidents that occurred while Plaintiff was employed as an electrician by Truland in the construction of the new Washington Nationals baseball stadium. Presently before the Court is Defendant's [26] Motion for Summary Judgment. In the course of briefing Defendant's Motion for Summary Judgment, Plaintiff conceded his hostile work environment claim. *See* Pl.'s Opp'n. at 13. Consequently, only Plaintiff's retaliation and disparate treatment claims remain before the Court to consider on summary judgment. Upon consideration of the pleadings[1], the relevant legal authorities, and the record as a whole, the Court finds that Plaintiff has failed to demonstrate that

---

[1] Defendant's Motion for Summary Judgment ("Def's Mot."), ECF No. [26]; Defendant's Statement of Undisputed Material Facts ("Def.'s Stmt."), ECF No. [26-1]; Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n."), ECF No. [27]; Plaintiff's Statement of Opposing Facts Which Show That There is a Genuine Dispute ("Pl.'s Resp. Stmt."), ECF No. [27-1]; Defendant's Reply to Plaintiff's Opposition ("Def.'s Reply"), ECF No. [29].

a genuine issue of material fact exists concerning his disparate treatment and retaliation claims. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

### A. *Factual Background*

The following facts are not disputed by the parties. Plaintiff, an African American male and a journeyman electrician, began working with Defendant Truland Systems Corporation ("Truland") on the construction of the Washington Nationals baseball stadium on November 5, 2007. Def.'s Stmt. ¶¶ 11, 13.[2] Truland was responsible for the electrical subcontract on the stadium project. *Id.* ¶ 2. On January 22, 2008, while Plaintiff was taking a break in the break room at the stadium, another electrician picked up a noose that had been fashioned out of electrical wire earlier in the day by two other employees, looked at Plaintiff, started laughing, held the rope up to his own neck, and said "I'm outta here." *Id.* ¶¶ 34, 38. The next day, Plaintiff, Bradley Brown, and several other electricians who were present during the noose incident reported the incident to their foreman, who in turn reported the incident up Truland's management chain. *Id.* ¶¶ 62, 64, 68, 70, 72, 77. A few days after the incident, Truland terminated the employment of all of the individuals involved in the noose incident. *Id.* ¶ 102. Truland Chairman and CEO Robert Truland also issued a public apology for the incident, as well as a private apology to Plaintiff and an apology to all Truland employees in which Truland expressed its opposition to the noose. *Id.* ¶¶ 125-29. On January 30, 2008, Truland management appeared at a roundtable meeting of the D.C. City Council regarding the noose incident. *Id.* ¶ 130. Plaintiff, Bradley Brown, and two other electricians also appeared and testified before the

---

[2] The Court shall refer to Defendant's Statement of Undisputed Material Facts ("Defs.' Stmt."), ECF No. [26-1], or directly to the record, unless a statement is contradicted by the opposing party, in which case the Court may cite to Plaintiff's Opposing Facts Which Show that there is a Genuine Dispute ("Pl.'s Resp. Stmt."), ECF No. [27-1].

D.C. City Council. *Id.* ¶ 131. Plaintiff alleges that during the meeting Robert Truland testified that Plaintiff would not be terminated for the next two years. Pl.'s Resp. Stmt. ¶ 23; Pl.'s Ex. 18.

Around the same time, Plaintiff and several other electricians also complained to Truland management about racial graffiti in the portable toilets at the stadium. Def.'s Stmt. ¶¶ 109-117. Truland had the graffiti painted over and signs warning against graffiti were placed in the portable toilets. *Id.* ¶¶ 118-119, 121. Finally, on February 6, 2008, Plaintiff reported to Truland's management that an employee of Mahogany Interior who was also employed at the stadium jobsite had made inappropriate racial comments. *Id.* ¶ 140. Truland in turn reported the incident to Mahogany Interior's management and the Mahogany Interior employee was fired. *Id.* ¶¶ 145, 151.

On March 10, 2008, Plaintiff, at his request, was promoted to subforeman. *Id.* ¶ 156; Pl.'s Ex. 9 (EEOC Complaint). Initially, Plaintiff was not paid the increased rate of a subforeman. *Id.* ¶ 173. On May 6, 2008, Plaintiff filed a complaint with the EEOC explaining that although he had been promoted to subforeman, his salary was not increased and he had not been given responsibilities commensurate with his position. *See* Pl.'s Ex. 9 (EEOC Complaint). Plaintiff alleged that he was being discriminated against based on his race and in retaliation for his complaints regarding the noose incident. *Id.* Sometime thereafter, Plaintiff began to be paid the increased rate and was retroactively paid for the increased rate back to the time at which he became subforeman. Def.'s Stmt. ¶ 173. Although Plaintiff alleged in his EEOC complaint that his lower salary and responsibilities were the effects of discrimination and retaliation, in his Opposition to Defendant's Motion for Summary Judgment Plaintiff does not now claim either as an adverse employment action.

In May 2008, the Washington Nationals stadium project was coming to a close, and Truland was laying off and transferring a lot of workers. *Id.* ¶¶ 185, 187-88. On June 13, 2008, Plaintiff was transferred from the stadium jobsite. *Id.* ¶ 189. Prior to Plaintiff's reassignment from the stadium project, Truland management discussed via email to which project Plaintiff and Bradley Brown could be assigned. *Id.* ¶ 190; Pl.'s Ex. 19 (Email Exchange Regarding Transfer). As part of the email exchange, Joe Roscher, a Truland Vice President and project executive, indicated that Truland "need[s] to keep Battle and Brown for at least a year." Pl.'s Ex. 19 (Email Exchange Regarding Transfer), at D660. Howard "Al" Silcott, Truland's general superintendent with responsibility for the stadium project, recommended that Plaintiff and Bradley Brown be assigned to GEICO, a Truland project in Fredericksburg, Virginia, because it was a "cost-plus" construction contract, which would permit Truland to obtain reimbursement under the contract for the additional labor hours that Plaintiff and Bradley Brown's assignment to the project would foster. *Id.* at D659; *see also* Def.'s Stmt. ¶ 192. In his email proposing the reassignment to GEICO, Mr. Silcott wrote: "got to get them [Plaintiff and Bradley Brown] off stadium." Pl.'s Ex. 19 (Email Exchange Regarding Transfer), at D659. In response to Mr. Silcott's email, Dean Filomena, a Truland general superintendent for the One Noma project, wrote:

> I'm laying off 10 a week for the next 3 to 4 weeks at Geico and will be coming down at One Noma at the end of the month I can swap some out I don't need your problem children.

*Id.* Shortly thereafter, Plaintiff was told he would be transferred to the GEICO project, but, concerned about the travel time, Plaintiff researched Truland's other projects, and requested to be assigned to the One Noma project in Washington, D.C. *Id.* ¶ 193. Per his request, Truland transferred Plaintiff to the One Noma project instead. *Id.* ¶ 194. Plaintiff never went to the GEICO job site. *Id.*

When Plaintiff arrived at the One Noma project in June 2008, the project was already coming to an end. *Id.* ¶ 200. John Young, the owner of Nationwide Electric ("Nationwide"), called Mr. Filomena to ask if Truland had anyone who would be interested in coming to work for him. *Id.* ¶ 201. Mr. Filomena spoke to Plaintiff about the opportunity at Nationwide and Plaintiff expressed his interest in accepting the opportunity. *Id.* ¶¶ 203-04. Had Plaintiff not taken the Nationwide position, he likely would have been laid off from Truland because the One Noma project was coming to an end. *Id.* ¶ 210. In order to take the position at Nationwide, Plaintiff's employment at Truland had to be terminated. *Id.* ¶ 205. Plaintiff's employment with Truland ended on July 3, 2008, and Plaintiff began working at Nationwide during the first week of July 2008. *Id.* ¶ 207.

On August 22, 2008, Nationwide terminated Plaintiff's employment. *Id.* ¶ 212. After Plaintiff was terminated, Plaintiff registered on the out-of-work list with the International Brotherhood of Electrical Workers ("IBEW") Union. *Id.* ¶ 214. Plaintiff was then hired by VARCO/MAC from October 31, 2008, until January 2, 2009, when he was terminated. *Id.* ¶¶ 214-15. After his termination, Plaintiff again registered with the IBEW Union's out-of-work list. *Id.* ¶ 217. The Collective Bargaining Agreement ("CBA") that IBEW had with Truland, Nationwide, and VARCO/MAC provided that "[t]he Union shall be the sole and exclusive source of referral of applicants for employment." *Id.* ¶ 220. Under the CBA, the Union is required to "refer applicants in the order of their place on the out-of-work list on which applicants are listed in chronological order of the dates they registered their availability for employment." *Id.* ¶ 222. As a result of not being in a position high enough on the out-of-work list at a point when Truland sought electricians from the Union hiring hall, the Union never referred Plaintiff to Truland after his employment with Truland terminated in 2008. *Id.* ¶ 231.

**B.** *Procedural Background*

Plaintiff filed this lawsuit on January 23, 2012, alleging three counts against Truland: retaliation, disparate treatment based on race, and hostile work environment. Shortly after the completion of discovery, Defendant filed the present Motion for Summary Judgment. In Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Plaintiff concedes his hostile work environment claim on the basis that "defendant took prompt action to correct the situation." Pl.'s Opp'n. at 13. Plaintiff's Opposition also refines the scope of his retaliation and disparate treatment claims. Specifically, Plaintiff alleges that he suffered three adverse employment actions because of his protected activity: (1) his reassignment from the stadium project to the One Noma project on June 16, 2008; (2) his termination from Truland on July 3, 2008, in order to work at Nationwide; and (3) his non-rehire by Truland after he was laid off from Nationwide. *Id.* at 6-8. Although Plaintiff's pleadings are far from a model of clarity, Plaintiff appears to allege that these three actions also form the basis of his disparate treatment claim. *See id.* at 12. Plaintiff also alleges a list of fourteen protected activities in which he engaged at the beginning of 2008. *Id.* at 5-6. Five of the alleged protected activities relate to complaints Plaintiff made about the noose incident, the graffiti, and the Mahogany employee's racial comments. *Id.* at 5. The other protected activities relate to complaints Plaintiff made to Truland management about African American employees being underpaid, workplace diversity generally, the lack of minority participation on the stadium project, the failure of a Truland employee to contact Plaintiff for a witness statement about a Caucasian foreman striking an African American foreman, Plaintiff's pay rate, Plaintiff's reassignment to the GEICO project, and the sexual harassment of a female on the One Noma project. *Id.* at 5-6.

Defendant moves the Court to grant summary judgment in Defendant's favor on all of Plaintiff's claims on the basis that Plaintiff cannot establish a *prima facie* case of retaliation or

disparate treatment or show that Defendant's legitimate, nondiscriminatory reasons for reassigning, terminating, and failing to rehire Plaintiff are pretextual.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that he] . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of his position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing *Kuo-Yun Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994)). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).

Importantly, "[w]hile summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Morgan v. Fed. Home Loan Mortgage Corp.*, 172 F. Supp. 2d 98, 104 (D.D.C. 2001), *aff'd*, 328 F.3d 647 (D.C. Cir. 2003); *see also Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (special caution "does not eliminate the use of summary judgment in discrimination cases") (citing cases). Accordingly, the Court reviews the Defendant's Motion for Summary Judgment under a "heightened standard" that reflects "special caution." *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 880 (D.C. Cir. 1997) (internal quotations omitted), *overturned on other grounds*, 156 F.3d

1284 (D.C. Cir. 1998) (en banc). Nonetheless, while this special standard is more exacting, it is not inherently preclusive. Although more circumspect, the Court shall grant a motion for summary judgment where the nonmoving party has failed to submit evidence that creates a genuine factual dispute and the moving party is entitled to a judgment as a matter of law.

## III. DISCUSSION

The Court notes at the outset that this case involved several serious incidents of racial harassment during the construction of the new Washington Nationals baseball stadium. These incidents were of great concern to the Washington, D.C. community and led the Council of the District of Columbia to introduce legislation making it a criminal offense to display a noose on any private or public property in the District if the intent of the action is to deprive a person of equal protection of the law, injure a person, intimidate a person exercising a federal right, or cause fear for personal safety. *See* Pl.'s Ex. 4 (Kwame Brown Press Release). Plaintiff's initial hostile work environment claim against Defendant Truland was predicated on these serious incidents of racial harassment. However, Plaintiff concedes that following these incidents, Truland "took prompt action to correct the situation" and thus should not be held liable for creating a hostile work environment. Pl.'s Opp'n. at 13. In light of this concession, the Court's analysis shall focus only on Plaintiff's remaining claims that Truland retaliated against him for making a series of complaints and that Truland discriminated against him based on his race in violation of 42 U.S.C. § 1981.

### A. *Disparate Treatment*

Section 1981, as amended by the Civil Rights Act of 1991, prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981; *see also Rivers v. Roadway Express,* 511 U.S. 298, 302 (1994) ("§ 1981's prohibition against

racial discrimination in the making and enforcement of contracts applies to all phases and incidents of the contractual relationship . . . .").  Under Section 1981 as under Title VII,[3] Plaintiff must demonstrate by a preponderance of the evidence that the actions taken by his employer were "more likely than not based on the consideration of impermissible factors" such as race, ethnicity, or national origin.  *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981) (internal quotation marks and citation omitted).  In so doing, "the plaintiff may prove his claim with direct evidence, and absent direct evidence, he may indirectly prove discrimination" under the burden-shifting analysis created by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *Brady v. Livingood,* 456 F.Supp.2d 1, 6 (D.D.C. 2006), *aff'd Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008).  As Plaintiff proffers no direct evidence that Truland discriminated against him based on his race, the *McDonnell Douglas* framework applies here.  Under this paradigm, a plaintiff has the initial burden of proving a *prima facie* case by a preponderance of the evidence.  *McDonnell Douglas,* 411 U.S. at 802.  If he succeeds, the burden shifts to the defendant to articulate some legitimate, non-discriminatory or non-retaliatory reason justifying its conduct.  *Id.*  If the defendant is successful, then "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non.*"  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–43 (2000) (internal citations and quotation marks omitted).

For a claim alleging disparate‐treatment discrimination, a plaintiff makes out a prima facie case by showing (1) that he is a member of a protected group; (2) that he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of

---

[3] "[T]he same standards apply in evaluating claims of discrimination and retaliation under Title VII and § 1981."  *Kidane v. Northwest Airlines, Inc.*, 41 F.Supp.2d 12, 17 (D.D.C. 1999); *see also Ramey v. Potomac Electric Power Co.*, 468 F.Supp.2d 51, 58 n.9 (D.D.C. 2006) (same).

discrimination.  *Wiley v. Glassman,* 511 F.3d 151, 155 (D.C. Cir. 2007).  At the summary judgment stage, however, the D.C. Circuit has instructed that, once an employer provides a legitimate, non-discriminatory basis for its decision, "the district court need not—*and should not*—decide whether the plaintiff actually made out a *prima facie* case under *McDonnell Douglas.*"  *Brady*, 520 F.3d at 494 (emphasis in original).  Rather, the central question for the Court to resolve is whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin."  *Id.*  Effectively, "[t]his boils down to two inquiries: could a reasonable jury infer that the employer's given explanation was pretextual, and, if so, could the jury infer that this pretext shielded discriminatory motives?"  *Murray v. Gilmore,* 406 F.3d 708, 713 (D.C. Cir. 2005).

Nevertheless, the Supreme Court has taken care to instruct trial courts that "the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  *Reeves,* 530 U.S. at 143 (quoting *Burdine,* 450 U.S. at 255 n.10).  "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Id.* at 148.  The Court of Appeals for the District of Columbia Circuit has distilled this analysis, noting that the factfinder can infer discrimination from the combination of:

> (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong record in equal opportunity employment).

*Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc). However, evidence in each of the three categories is not required. *Id.* "At this stage, if [the plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [the defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [plaintiff]." *Paquin v. Fed. Nat'l Mortgage Ass'n,* 119 F.3d 23, 27–28 (D.C. Cir. 1997). "[T]he court must consider all the evidence in its full context in deciding whether the plaintiff has met his burden of showing that a reasonable [fact-finder] could conclude that he has suffered discrimination." *Aka,* 156 F.3d at 1290.

### B. *Retaliation*

The Supreme Court has also held that Section 1981 encompasses claims of retaliation. *CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 445 (2008). "Like claims of discrimination, claims of retaliation are governed by the *McDonnell Douglas* burden-shifting scheme." *Carney v. Am. Univ.*, 151 F.3d 1090, 1094 (D.C. Cir. 1998) (citing *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984)). As Plaintiff proffers no direct evidence that Truland retaliated against him for his protected activity, the *McDonnell Douglas* framework applies here. Under the *McDonnell Douglas* paradigm, Plaintiff has the initial burden of proving a *prima facie* case of retaliation by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802. To prove unlawful retaliation, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) his employer took an adverse personnel action against him; and (3) a causal connection exists between the two. *Wiley*, 511 F.3d at 155. If Plaintiff succeeds in establishing a *prima facie* case, the burden then shifts to Truland to articulate some legitimate, non-retaliatory reason for its actions, and to produce credible evidence supporting its claim. *McDonnell Douglas*, 411 U.S. at 802. However, as with disparate treatment claims, at the summary

judgment stage, if the employer produces a legitimate non-discriminatory reason for its actions, "the district court need not—and *should not*—decide whether the plaintiff actually made out a *prima facie* case under *McDonnell Douglas*;" "the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation." *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (quoting *Brady*, 520 F.3d at 494) (emphasis in original) (internal quotation marks omitted).

### C. Analysis

Plaintiff alleges that Truland took three adverse employment actions against him that were motivated by retaliatory and discriminatory animus: (1) his reassignment from the stadium project to the One Noma project on June 16, 2008 ("Plaintiff's reassignment"); (2) his termination from Truland on July 3, 2008, in order to work at Nationwide ("Plaintiff's termination"); and (3) his non-rehire by Truland after he was laid off from Nationwide ("Plaintiff's non-rehire"). Pl.'s Opp'n. at 6-8. Although Plaintiff's Opposition does not clearly distinguish between these three adverse actions in discussing Plaintiff's evidence of retaliation and discrimination, for the sake of clarity the Court shall independently analyze each employment action, Truland's proffered legitimate, non-discriminatory reason for that action, and Plaintiff's evidence of pretext. As Defendant Truland has offered a legitimate, non-discriminatory reason for each adverse employment action against Plaintiff, the only question for the Court to address is "whether [Plaintiff's] evidence creates a material dispute on the ultimate issue of retaliation" or disparate treatment. *Jones*, 557 F.3d at 678 (quoting *Brady*, 520 F.3d at 494).

### i. Plaintiff's Reassignment

Truland contends that Plaintiff was reassigned from the Washington Nationals stadium project to the One Noma project on June 16, 2008, because the stadium project was coming to a close, and, as a result, Truland was laying off and transferring a lot of workers from the stadium project. Def.'s Stmt. ¶¶ 185, 187-88. Truland also explains that it initially sought to transfer Plaintiff to the GEICO project because it was a "cost-plus" construction contract, but that it ultimately transferred Plaintiff to the One Noma project at Plaintiff's own request. *Id*. ¶¶ 190, 192-94. In his response statement to Defendant's statement of material facts, Plaintiff concedes that the stadium project was coming to an end. Plaintiff also concedes that he was transferred to the One Noma project at his own request. Nevertheless, in his Opposition, Plaintiff argues that Truland's explanation for Plaintiff's reassignment off the stadium project is pretext for retaliation and racial discrimination.[4] As evidence that Truland's explanation is pretextual, Plaintiff points to the following: (1) the email by Al Silcott in which Mr. Silcott writes that he needs to "get" Plaintiff and Bradley Brown off the stadium project and (2) the email response by Dean Filomena in which Mr. Filomena refers to Plaintiff and Bradley Brown as "problem children." The Court finds this evidence insufficient to create a genuine issue of material fact as to whether Truland's legitimate, non-discriminatory reason for Plaintiff's reassignment is pretext for racial discrimination or retaliation.

---

[4] In his Opposition, Plaintiff conclusorily states that he "has made out a *prima facie* case of disparate treatment," *see* Pl.'s Opp'n. at 1, but never actually articulates an argument as to how he has established such a *prima facie* case or as to how Truland's actions raise an inference of discrimination despite Truland's legitimate, non-discriminatory reasons for its adverse employment actions, *see* Pl.'s Opp'n. at 12. The Court has conducted a generous reading of Plaintiff's Opposition and considered the evidence of pretext and discriminatory motive on which Plaintiff relies to support his retaliation claim in evaluating Plaintiff's disparate treatment claim, to the extent that such evidence would support such a claim.

First, Mr. Silcott's statement that he needed to "get" Plaintiff and Bradley Brown off the stadium project neither on its face nor implicitly shows retaliatory or discriminatory intent. Instead, the statement appears to simply reflect the fact—which Plaintiff does not dispute—that the stadium project was ending at the time the statement was made and that, as a result, Truland had to lay off or reassign the workers remaining on the project. Accordingly, the Court finds this statement does not raise an inference of discriminatory or retaliatory motive in Plaintiff's reassignment.

Second, contrary to Plaintiff's contention, Mr. Filomena's reference to Plaintiff and Mr. Brown as "problem children" is not direct evidence of retaliation or discrimination. A remark is not direct evidence unless it "proves the particular fact in question without any need for inference." *Lemmons v. Georgetown Univ. Hosp.*, 431 F.Supp.2d 76, 86 (D.D.C. 2006) (citations omitted). In other words, the remark must show a discriminatory or retaliatory motive on its face. *Id.* Calling two individuals "problem children" in an email exchange that is otherwise devoid of any racial reference or mention of protected activity is not direct evidence of discrimination. Such a remark may nevertheless be probative of discriminatory or retaliatory animus. However, Mr. Filomena's remark in the context of the email exchange in which it occurred has extremely limited probative value. Instead of a reference to Plaintiff's engagement in protected activity, Mr. Filomena's comment can be understood as a reaction to the assignment of additional workers that Truland management believed needed to remain employed while Mr. Filomena was already in the process of laying off workers at the GEICO project and would next start laying off workers from the One Noma project. Mr. Filomena's remark is even less probative of *racial discrimination* because "nothing in the statement suggests that the plaintiff was being targeted based upon [his race]." *Warner v. Vance-Cooks*, 956 F.Supp.2d 129, 157

(D.D.C. 2013).  Even more direct statements have been held insufficient to create a triable issue when the defendant offered a legitimate, non-discriminatory reason for the challenged decision that the plaintiff otherwise failed to rebut as pretext.  *See Forman v. Small,* 271 F.3d 285, 293 (D.C. Cir. 2001) (in age discrimination suit, "series of comments . . . that implicitly referred to [the plaintiff's] age [including] . . . that [the plaintiff] may be 'over the hill' or in the 'twilight of his career,' and may have 'written his last significant article' " may support *prima facie* case but did not show legitimate reason given by employer for denying promotion was pretext). Accordingly, the Court finds Mr. Filomena's stray remark insufficient to raise an inference that Truland's explanation for Plaintiff's reassignment is pretext for discrimination or retaliation.[5]

### ii.      Plaintiff's Termination

As for Plaintiff's lay-off from the One Noma project and Truland in July 2008, Truland contends that when Plaintiff arrived at the One Noma project in June 2008, the project was already coming to an end.  Def.'s Stmt. ¶ 200.  Mr. Filomena, general superintendent of the One Noma project, spoke to Plaintiff about an opportunity at Nationwide that was brought to Mr. Filomena's attention and Plaintiff expressed his interest in accepting the opportunity.  *Id.* ¶¶ 203-04.  Truland further contends that had Plaintiff not taken the Nationwide position, he likely

---

[5] To the extent Plaintiff is citing Mr. Filomena's remark as evidence of retaliatory or discriminatory animus in Plaintiff's termination from Truland in order to work at Nationwide or Truland's failure to rehire Plaintiff, the Court notes that Mr. Filomena's remark is not direct evidence of discrimination or retaliation.  "While courts have not precisely defined what constitutes 'direct evidence,' it is clear that 'at a minimum, direct evidence does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself.' " *Brady*, 456 F.Supp.2d at 6 (citing *Ayala–Gerena v. Bristol Myers–Squibb Co*., 95 F.3d 86, 96 (1st Cir.1996) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251–52 (1989) (plurality op.))).  Here, Mr. Filomena's statement related only to Plaintiff's reassignment from the stadium project, not to Plaintiff termination from Truland or to Truland's failure to rehired Plaintiff.  Moreover, for the same reasons (outlined *supra*) that Mr. Filomena's statement is not probative of discriminatory or retaliatory animus in Plaintiff's reassignment, it is also not probative of retaliatory or discriminatory animus in Plaintiff's termination or Truland's failure to rehire Plaintiff.

would have been laid off from Truland because the One Noma project was coming to an end. *Id.* ¶ 210. In order for Plaintiff to accept the position at Nationwide—a different company— Plaintiff's employment at Truland had to be terminated. *Id.* ¶ 205. As with Truland's explanation for Plaintiff's reassignment, Plaintiff concedes that the One Noma project was coming to an end and that he agreed to take the position at another company, Nationwide, when Mr. Filomena presented the opportunity to him. Nevertheless, as evidence that Truland's explanation is pretextual, Plaintiff points to the following: (1) the fact that Truland was conducting work at more than twenty job sites in and around D.C. when Plaintiff was terminated from Truland, and (2) statements by two Truland executives that Plaintiff needed to remain employed by Truland for one or two more years. Specifically, Plaintiff argues that the fact that Truland admits it was conducting work at more than twenty job sites at the time Plaintiff was terminated from Truland exposes as fallacious Truland's claim that it terminated Plaintiff's employment with Truland because the One Noma project was ending. In other words, Plaintiff contends that Truland could have employed him at one of several other job sites and thus did not need to terminate him when the One Noma project ended, suggesting that Truland actually terminated him for retaliatory or discriminatory reasons. This evidence, however, fails to create a genuine issue of material fact. As Defendant explains, the presence of a project on Truland's list of job sites is not an indication that any particular project had any need for electricians. Def.'s Mot. at 24-25. Moreover, Plaintiff presents no evidence that Truland had any open positions for which Plaintiff was qualified at the time he was terminated from Truland. Accordingly, the Court finds that, with this fact, Plaintiff fails to create a genuine dispute as to whether Defendant's reason for terminating Plaintiff was the actual reason.

As further evidence of pretext, Plaintiff points to the fact that Rob Truland, Truland's Chairman and CEO, testified before the D.C. Council that Plaintiff would not be terminated from Truland for the next two years, and that Joe Roscher, Truland's Vice President and project executive, stated in an email that Truland needed to keep Plaintiff for at least one year, yet Plaintiff was terminated less than a year after these statements were made.[6]  These facts, standing alone, do not suggest Defendant acted with a discriminatory or retaliatory motive in terminating Plaintiff from Truland or that Defendant's reasons for terminating Plaintiff were not its actual reasons.  These facts only show that Defendant failed to keep an alleged promise regarding the duration of Plaintiff's employment, but they do not establish or even suggest why Defendant failed to keep that promise.  As Plaintiff otherwise presents no evidence that he was treated worse than other similarly situated electricians in being terminated from Truland, the Court finds

---

[6] Plaintiff alleges in his response statement to Defendant's statement of material facts that Robert Truland testified before the D.C. Council that he would keep Plaintiff's job secure for two years.  *See* Pl.'s Resp. Stmt. ¶ 23.  As support for this allegation, Plaintiff cites to a letter that Plaintiff wrote to an unidentified individual or entity in which he states: "the owner testified in the Hearing that our position would be secure for at least two years."  *See* Pl.'s Ex. 18. Plaintiff's allegation regarding Robert Truland's statement cannot be considered for the purposes of summary judgment.  To survive summary judgment, the non-moving party must "produce evidence . . . capable of being converted into admissible evidence."  *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting *Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)).  "[S]heer hearsay . . . counts for nothing on summary judgment." *Id.* (internal quotation marks omitted).  Robert Truland's alleged statement is nothing more than inadmissible hearsay.  Plaintiff does not indicate whether he actually heard Mr. Truland's statement and, despite apparently having access to the transcript of the hearing where Mr. Truland made the alleged statement, *see* Def.'s Reply at 5, Plaintiff does not include the transcript in the exhibits he attached to his Opposition.  Accordingly, the Court shall not rely on Mr. Truland's hearsay statement.  However, Mr. Truland's statement is ultimately immaterial because Plaintiff presents evidence that another Truland employee, Joe Roscher, also made a comment about needing to employ Plaintiff for a period longer than he was ultimately employed by Truland.  In his exhibits, Plaintiff corroborates this statement with a copy of the email in which Mr. Roscher made the statement.  Thus, the Court shall still evaluate this specific argument regarding pretext.

these facts do not create a material dispute as to whether Truland's reason for terminating Plaintiff is pretext for discrimination or retaliation.

### iii. Plaintiff's Non-Rehire

Finally, Truland contends that Plaintiff was never rehired by Truland after he was laid off from Nationwide because the IBEW Union's CBA with Truland provided that "[t]he Union shall be the sole and exclusive source of referral of applicants for employment" and Plaintiff was never in a position high enough on the out-of-work list at a point when Truland sought electricians from the Union hiring hall. Def.'s Stmt. ¶ 231. Although Plaintiff concedes that he was never in a position high enough on the Union out-of-work list when Truland sought electricians from the Union, Plaintiff argues that Truland's failure to rehire him was retaliatory. As evidence of retaliation, Plaintiff points to the fact that another electrician, Charles Brown, who was previously employed by Truland, but did not engage in protected activity at Truland, was rehired by Truland while Plaintiff was not rehired.

The fact that another electrician, Charles Brown, who Plaintiff alleges was not engaged in protected activity, was rehired by Truland in October 2008 while Plaintiff was not is, without more, insufficient to raise an inference of retaliation. Plaintiff alleges that he and Mr. Brown both served as electricians with Truland and later Nationwide and were laid off from Nationwide at the same time. Plaintiff further alleges that Mr. Brown was rehired by Truland in October 2008, while Plaintiff was not despite both Plaintiff and Mr. Brown "keeping in touch with Mr. Filomena [and] inquiring about vacancies with Truland." Pl.'s Resp. Stmt. ¶ 32. Plaintiff was, however, hired by VARCO/MAC in October 2008, the same month Mr. Brown was rehired by Truland. These facts do not create a genuine issue of material fact because Plaintiff does not present any facts suggesting that Plaintiff was in a position to be hired by Truland at the time Mr.

Brown was rehired by Truland. The undisputed facts establish that Truland was required to exclusively hire electricians referred to it from the IBEW Union out-of-work list, and that referrals were made in the order of the electrician's place on the out-of-work list. Plaintiff presents no facts as to when he registered on the out-of-work list and especially when he registered as compared to Mr. Brown's registration. Moreover, Plaintiff does not present any facts indicating when the position taken by Mr. Brown became available at Truland nor when that position became available in relation to the position Plaintiff was offered by VARCO/MAC, which he began the same month as Mr. Brown was rehired by Truland. In other words, Plaintiff's comparator evidence is insufficient to create a genuine dispute on the issue of retaliation because Plaintiff does not allege any facts as to whether Mr. Brown was in a higher position on the Union's out-of-work list than Plaintiff and referred to Truland instead of Plaintiff when a position became available or, alternatively, that Plaintiff was in a higher position on the out-of-work list, but the opportunity at VARCO/MAC became available first and thus Plaintiff was never referred to Truland. Plaintiff focuses on the fact that he kept in touch with Mr. Filomena about opportunities at Truland after he was terminated from Truland, but Plaintiff does not dispute that under the CBA an employer may only request an electrician by name if "the employee's name appears on the highest priority group eligible for referral." Def.'s Stmt. ¶ 228. Plaintiff presents no facts suggesting that he was in that priority group or that an opportunity was ever available for which Plaintiff was qualified. Importantly, Plaintiff concedes the fact that "as a result of not being in a position high enough on the out-of-work list at a point when Truland sought electricians from the Union hiring hall, the Union never referred Plaintiff to Truland after his employment with Truland terminated in 2008." *Id.* ¶ 231. Accordingly, the Court finds that

Plaintiff's reliance on this comparator fails to raise an inference the Truland retaliated against Plaintiff in failing to rehire him after he was laid off from Nationwide.

### iv. Other Evidence

The Court finds that none of the evidence discussed *supra* is sufficient, individually or collectively, to create a genuine issue of material fact as to whether Defendant's legitimate, non-discriminatory reasons for any of its adverse employment actions are pretext for racial discrimination or retaliation. The only other evidence to which Plaintiff points in his pleadings is that he engaged in protected activity[7] shortly before he was reassigned, terminated, and not rehired. While close temporal proximity between a protected activity and an adverse employment action is sufficient to establish causation at the *prima facie* stage of a retaliation claim, "positive evidence beyond mere proximity is required to defeat the presumption that [an employer's] explanations are genuine." *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007). As Defendant has offered a legitimate, non-discriminatory reason for the adverse actions it took against Plaintiff and Plaintiff has not offered any evidence sufficient to create a genuine dispute as to the veracity of Defendant's reasons or otherwise raise an inference of retaliatory motive, temporal proximity alone is insufficient to create a genuine issue of material fact as to the definitive question of discrimination *vel non.*

---

[7] In its Motion for Summary Judgment, Defendant devotes substantial space to arguing that most of the long list of protected activities that Plaintiff sets forth in his Opposition do not actually qualify as protected activities and, if they do, were too temporarily distant from any of the alleged adverse actions to allow for an inference of causation. *See* Def.'s Mot. at 5-15. Although the Court recognizes that Plaintiff must establish that he engaged in a protected activity to prevail on a retaliation claim, the Court need not address these arguments because even assuming all of Plaintiff's allegedly protected activities are in fact protected activities, the Court finds that Plaintiff has failed to rebut Defendant's legitimate, non-discriminatory reasons for taking the adverse actions against Plaintiff and adduce sufficient evidence to create a material dispute on the ultimate issue of retaliation or discrimination.

Ultimately, it would appear that Plaintiff would have this Court conclude that his reassignment, termination, and non-rehire were discriminatory and/or retaliatory based on his *prima facie* case, without a proffer of additional evidence supporting an inference that Truland's reasons for these adverse employment actions were pretext for racial discrimination or retaliation.[8] As a result, and based on the totality of the admissible evidence before the Court, a jury could not reasonably conclude that Plaintiff's reassignment, termination, and non-rehire constituted impermissible racial discrimination or retaliation under § 1981. Accordingly, the Court shall grant Defendant's Motion for Summary Judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[8] Defendant argues in the alternative that Plaintiff cannot prevail on his claim of retaliation because, by conceding Truland's legitimate reasons for the challenged employment actions, Plaintiff cannot establish "but-for" causation, which the Supreme Court held in *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct 2517, 2533 (2013), is required for a plaintiff to prevail in a retaliation claim. *Nassar*, however, addressed retaliation claims brought under Title VII. The present case involves a § 1981 retaliation claim. While courts in this Circuit have held that "the same standards apply in evaluating claims of discrimination and retaliation under Title VII and § 1981," *Kidane v. NW. Airlines, Inc.*, 41 F.Supp.2d 12, 17 (D.D.C. 1999), the Supreme Court's analysis in *Nassar* was based on the specific language and structure of Title VII, as distinguished from other anti-discrimination and retaliation laws, including § 1981. *See Nassar*, 133 S.Ct. at 2530. This Circuit has yet to address the applicability of *Nassar*'s holding to § 1981 retaliation claims. This Court need not now decide the applicability of *Nassar*'s analysis to a § 1981 retaliation claim because Plaintiff has failed to adduce sufficient evidence to create a genuine dispute of material fact as to whether Defendant retaliated against him under either a "but-for" or "motivating factor" causation standard.